IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:06-CV-91-D(3)

| | |
|---|---|
| RICHARD MCCLOSKEY,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **MEMORANDUM &**<br>   **RECOMMENDATION** |

This matter is before the Court upon the parties' Cross-Motions for Judgment on the Pleadings **[DE's 10-11, 18-19]**. Plaintiff has also filed a response to Defendant's motion **[DE-23]**. The time for either party to file any further responses or replies has expired and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for a Memorandum and Recommendation. The underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income Payments ("SSI").

**Statement of the Case**

Plaintiff applied for DIB and SSI on August 26, 2003, alleging that he became unable to work on June 2, 2001 (Tr. 16-17). This application was denied at the initial and reconsideration levels of review. *Id*. at 16. A hearing was later held before an Administrative Law Judge ("ALJ"), who found Plaintiff was not disabled during the relevant

1

time period in a decision dated December 28, 2005. *Id.* at 16-23. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, rendering the ALJ's determination as Defendant's final decision. *Id.* at 5-7. Plaintiff filed the instant action June 28, 2006 **[DE-3]**.

## Standard of Review

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...
> Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff

2

was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## **Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment (Tr. 17). At step two, the ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar spine with chronic low back pain and a seizure disorder. *Id.* at 20. These impairments were deemed severe by the ALJ. *Id.* In completing step three, however, the ALJ determined that neither of these impairments, either singly or in combination, were severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

3

*Id*.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work activity with a restriction from concentrated exposure to work hazards. *Id*. at 20-21. Based on this finding, the ALJ found that Plaintiff could not perform any of his past relevant work. *Id*. at 21. Finally, at step five the ALJ concluded that the Medical-Vocational Guidelines ("Grids") Rule 203.22 directed a finding that Plaintiff was not disabled at any time through the date of his decision *Id*. at 22. The testimony of a vocational expert ("VE") was not presented at this stage. A summary of the evidence cited and relied upon by the ALJ now follows.

Plaintiff was hospitalized overnight on June 16, 2001 after being involved in a motor vehicle crash while riding his scooter. *Id*. at 107. He was diagnosed with a soft tissue injury and a chin laceration. *Id*. The treating physician also noted that Plaintiff was intoxicated at the time of the event. *Id*. An outpatient progress note dated August 3, 2001 indicated that these injuries had healed well. *Id*. at 125.

On September 2, 2003 Plaintiff was treated for complaints of back and shoulder pain resulting from his earlier scooter accident. *Id*. at 134. A Physical examination was unremarkable with good range of motion of the lumbar spine. *Id*. Plaintiff had intact sensation and reflexes of the lower extremities. *Id*. An orthopedic examination of the hips, knees and ankles was deemed to be normal. *Id*. Plaintiff was diagnosed with a sprain/strain of the lumbar spine and given Vioxx samples. *Id*.

4

Dr. Carolina Hernandez treated Plaintiff on October 6, 2003 for complaints of back and right shoulder pain. *Id.* at 121-122. Examination revealed increased pain on active and passive movement of the right shoulder and lower back. *Id.* at 121. Plaintiff was prescribed Naproxen and Flexeril and was advised to follow-up in one month. *Id.*

Plaintiff was examined by Dr. Alicja E. Rafalowski on January 5, 2004. *Id.* at 135-141. He was diagnosed with: 1) chronic lower back pain; 2) degenerative arthritis of the lumbar spine; 3) hypertension; and 4) a history of blackouts versus seizures. *Id.* at 137. Dr. Rafalowski observed that Plaintiff had mild limitation in range of motion of the lumbar spine, but otherwise he had a normal range of motion in his hips, knees and ankles. *Id.* at 138. He did not have any neurological deficits. *Id.* Ultimately, Dr. Rafalowski determined that Plaintiff: 1) could sit for about 30 minutes before having to change position; 2) walk and move around for about 30 minutes; 3) should not lift and carry objects heavier than 10 pounds; and 3) should not drive because of his reported episodes of blackouts. *Id.* She also opined that Plaintiff required further investigation to rule out any seizure disorder. *Id.*

The ALJ stated the following with regard to Dr. Rafalowski's observations:

> The undersigned disagrees with Dr. Rafalowski with regard to her conclusion that the [Plaintiff] was incapable of lifting more than ten pounds and from sitting more than thirty minutes or walking and moving around more than thirty minutes given that her opinion appears to be based solely on the [Plaintiff's] subjective complaints during her one opportunity to exam [sic] the [Plaintiff] and than an MRI performed that same month showed only mild degenerative disc disease of the [Plaintiff's] lumbrosacral spine.
> *Id.* at 19.

On January 14, 2004, Plaintiff was examined again by Dr. Hernandez. *Id.* at 120. Dr.

5

Hernandez noted that Plaintiff continued to complain of chronic lower back pain. *Id.* A MRI of the lumbar spine performed that same date revealed minimal degenerative disc disease from L2-3 through L5-S1 without any other significant abnormality. *Id.* at 131. Plaintiff was examined by Dr. Hernandez again on January 28, 2004. *Id.* at 119. He was given a prescription for methadone for his chronic back pain. *Id.* With regard to Plaintiff's complaints of black-outs, Dr. Hernandez noted that Plaintiff's neurology consult was still pending. *Id.* On February 17, 2004, Plaintiff reported having one blackout episode in the previous month. *Id.* at 117. At that time, Plaintiff's neurology evaluation was again still pending. *Id.* Plaintiff's methadone prescription was continued. *Id.* Plaintiff stated on March 18, 2004 that he had experienced several more blackout episodes since his last visit. *Id.* at 116. Dr. Hernandez noted Plaintiff was having difficulty getting neurology to see him since he did not have insurance. *Id.* From April 15, 2004 through March 24, 2005, Plaintiff was examined six times by Dr. Hernandez. *Id.* at 109-115. During these visits, his methadone prescription was refilled, and Plaintiff generally had no complaints regarding his back pain. *Id.* However, he did note that he continued to experience syncopal episodes throughout this time. *Id.* On March 24, 2005, he indicated that he was experiencing one syncopal episode per week. *Id.* at 109.

Dr. Charles M. Epstein evaluated Plaintiff on May 27, 2005 with regard to his episodes of blackouts. *Id.* at 153-157. An EEG ordered by Dr. Epstein was normal. *Id.* at 154. However, Dr. Epstein specifically noted that a normal EEG does not rule out epilepsy

6

or seizure. *Id.* A Fundoscopic exam was normal with full visual fields. *Id.* at 156. No focal weaknesses were noted, although Plaintiff did have mild diffuse hyperreflexia. *Id.* Plaintiff was diagnosed with a history most consistent with non-epileptic seizures. *Id.*

On January 16, 2004, Dr. Sankar Dumar assessed Plaintiff's RFC. *Id.* at 142-150. Dr. Kumar determined that Plaintiff could: 1) occasionally lift and/or carry 50 pounds; 2) frequently lift and/or carry 25 pounds; 3) stand and/or walk about 6 hours in a 8-hour workday; and 4) sit (with normal breaks) for a total of about 6 hours in an 8-hour workday. *Id.* at 143. No postural, visual, or communicative limitations were noted. *Id.* at 144-146. With regard to manipulative limitations, Dr. Dumar opined that Plaintiff should be restricted to only occasional overhead reaching with his right shoulder. *Id.* at 145. Finally, Dr. Dumar stated that Plaintiff should avoid concentrated exposure to hazards secondary to blackouts. *Id.* at 146.

When Plaintiff testified at the hearing before the ALJ, he stated that his "biggest problem" was his lack of stamina. *Id.* at 171. He described an inability to perform any work for more than two hours before needing to change positions due to back pain with numbness, tingling and stiffness. *Id.* at 171-172. In addition, he alleged that he usually only slept two to four hours at a time because of his need for positional changes. *Id.* at 172-173. Plaintiff testified that methadone made his pain subside although it did not completely eliminate the pain. *Id.* at 173. During the day, Plaintiff reads, watches television, and performs light chores. *Id.* at 174-175. About three times a week, Plaintiff walks for 15 to 30 minutes at a

7

time. *Id.* at 175-176. He also testified that he could stand between an hour and two hours before he had to sit or lie down. *Id.* at 176. Furthermore, he indicated that he could lift and carry up to twenty pounds one or two times per day. *Id.* at 178. Plaintiff noted that he was able to bend over to tie his shoes. *Id.* He also reported that he experienced black-outs one or two times a week. *Id.* at 178-179. Because of his black-outs, Plaintiff refuses to drive. *Id.* at 180.

With regard to Plaintiff's testimony, the ALJ stated:

> the undersigned finds the [Plaintiff's] testimony to be less than credible with regard to his residual functional capacity given that his orthopedic examination in September 2003 proved to be normal. [*Id.* at 134] Moreover, despite his allegations of debilitating medical problems, the [Plaintiff] reported to Dr. Hernandez on four occasions during the period from June 15, 2004 to February 17, 2005, that he did not have any complaints. [*Id.* at 109-131] Additionally, per his testimony, the [Plaintiff] remains capable of an array of activities of daily living including performing household chores, walking, reading and watching television, an indication that he not only retains enough stamina to perform such acts, but that he is capable of sustained attention for extended periods.
> *Id.* at 18.

After weighing all the evidence of record, the ALJ made the following findings regarding Plaintiff's impairments:

> [Plaintiff's] back impairment does not meet the requirements of Listings 1.02 or 1.04 as the condition has not resulted in an inability to ambulate effectively given the information received from Dr. Epstein dated May 27, 2005, in which he noted that the [Plaintiff] had a normal tandem gait as well as narrow-based regular gait at normal speed with symmetric arm swing. [*Id.* at 153-157] Additionally, the [Plaintiff's] seizure disorder fails to meet the criteria of Listing 11.03 inasmuch as there is not medical documentation that the [Plaintiff] has experienced the seizures more frequently than once per week.
> *Id.* at 20.

The ALJ also made the following determination regarding Plaintiff's RFC:

> After review of the entire medical record, the undersigned agrees with the finding of the State Agency consulting physicians that the [Plaintiff] remains capable of work involving the following: occasional lifting of fifty pounds; frequent lifting of twenty-five pounds; standing/walking about six hours in an eight-hour workday; and sitting about six hours in an eight-hour workday, with a restriction from concentrated exposure to work hazards such as moving machinery and unprotected heights . . . [a]ccordingly, the undersigned finds that the [Plaintiff] retains the following residual functional capacity: medium work activity (work involving occasional lifting of fifty pounds; frequent lifting of twenty-five pounds; standing/walking about six hours in an eight-hour workday; and sitting about six hours in an eight-hour workday) with a restriction from concentrated exposure to work hazzards such as moving machinery and unprotected heights.
> *Id*. at 20-21.

The ALJ specifically noted that he was restricting Plaintiff's exposure to work hazards because of Plaintiff's seizures. *Id*. at 21. Furthermore, while not explicitly mentioned in the ALJ's RFC assessment, the ALJ further determined that Plaintiff was unable to perform his past relevant work because Plaintiff has been advised not to drive due to his seizure activity. *Id*. at 21.

Based on the forgoing record, the Court finds that there was substantial evidence to support the ALJ's conclusions through step four of the sequential analysis. Although Plaintiff lists several assignments of error, each assignment essentially contends that the ALJ improperly weighed the evidence before him. However, this Court must uphold Defendant's factual findings if they are supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the

role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. For this reason, the majority of Plaintiff's claims are meritless. Specifically, Plaintiff's arguments that: 1) the ALJ's RFC finding was incorrect; 2) the ALJ failed to assess the medical evidence adequately; and 3) the ALJ's assessment of Plaintiff's credibility was not adequate are without merit because substantial evidence supports the ALJ's findings in each of these areas.

However, the ALJ erred at step five of the sequential analysis by failing to employ the testimony of a VE. If a claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to satisfy his burden of proof. Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir. 1987); Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983). The Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments. Aistrop v. Barnhart, 36 Fed. Appx. 145, 146 (4th Cir. 2002)(unpublished opinion). To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the Grids may not be relied upon to demonstrate the availability of alternate work activities. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983). Rather, when a claimant suffers from both exertional and nonexertional limitations, the Grids are not conclusive but may only serve as a guide. Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989)(*citing* Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)). A nonexertional

10

Case 7:06-cv-00091-D    Document 25    Filed 06/20/07    Page 10 of 14

limitation is a "limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not . . . [s]uch limitations are present at all times in a claimant's life, whether during exertion or rest." Woody v. Barnhart, 326 F. Supp.2d 744, 752 (W.D.Va. 2004)(*quoting* Gory 712 F.2d at 930)). Typically, they are conditions such as mental disorders, environmental intolerances, substance addictions, or sensory impediments. *Id.* (*citing* 20 C.F.R. § 1569a, SSR 96-8p; and Walker, 889 F.2d at 48-49 (4th Cir. 1989)). Furthermore "[a] non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category." Aistrop, 36 Fed. Appx. at 147(*citing* Gory, 712 F.2d at 930). However, not every nonexertional limitation or malady rises to the level of nonexertional impairment, so as to preclude reliance on the Grids. Walker, 889 F.2d at 49 (*citing* Grant, 699 F.2d at 189). The proper inquiry is whether the nonexertional condition affects an individual's RFC to perform work of which he is exertionally capable. *Id.* When a claimant suffers from nonexertional limitations, the Commissioner must produce a VE to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy. Grant, 699 F.2d at 192 (*citing* Taylor v. Weinberger, 512 F.2d 664 (4th Cir. 1975)).

Here, the ALJ found that Plaintiff had the RFC to perform medium work activity. However, this RFC was clearly limited by restricting Plaintiff from concentrated exposure to work hazards such as moving machinery and unprotected heights (Tr. 20-21, 23).[1] This

---

[1] Although the ALJ later asserts that Plaintiff can "perform the demands of the full range of medium work", this finding is not consistent with the restrictions he had previously placed upon Plaintiff.

11

limitation affects Plaintiff's RFC to perform work of which he is exertionally capable. The justification the ALJ gave for this restriction was that it was necessary to account for Plaintiff's seizures. *Id.* at 21. Likewise, in support of his finding that Plaintiff could no longer perform his past relevant work the ALJ cited the fact that Plaintiff was advised not to drive "due to his seizure activity." *Id.* Plaintiff's seizures constitute a limitation that is present whether he is attempting to perform the physical requirements of the job or not, and thus they qualify as a nonexertional limitation. In short, the ALJ restricted Plaintiff from performing a full range of medium work and the basis of this restriction was a nonexertional limitation. As such, Defendant was required to produce the testimony of a VE to meet his burden at step five of the sequential evaluation. Grant, 699 F.2d at 192.

## Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-10]** be DENIED IN PART AND GRANTED IN PART, and that Defendant's Motion for Judgment on the Pleadings **[DE-18]** be DENIED IN PART AND GRANTED IN PART. Specifically, the undersigned finds that substantial evidence supports each of Defendant's findings through step four of the sequential analysis. Therefore, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings be DENIED and Defendant's Motion for Judgment on the Pleadings be GRANTED with

regard to all aspects of Defendant's decision through step four of the sequential evaluation.[2] However, because Defendant failed to provide the testimony of a VE at step five of the sequential analysis, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings be GRANTED and Defendant's Motion for Judgment on the Pleadings be DENIED with regard to Defendant's finding at step five that Plaintiff could perform other jobs found in the national economy. Therefore, it is RECOMMENDED that this matter be remanded to obtain the testimony of a VE at step five to determine whether Plaintiff retains the ability to perform specific jobs which exist in the national economy. Walker, 889 F.2d at 50.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 20th day of June, 2007.

_____
William A. Webb
U.S. Magistrate Judge

---

[2] To be clear, the undersigned finds that the ALJ's step four determination includes the limitations placed upon Plaintiff's RFC due to his seizure activity. The ALJ's statement that "the claimant can perform the demands of the full range of medium work" is not supported by substantial evidence.